Loan No.:  3020245324

| Modification Fees/Payments Required at Modification | Include in Modified Loan Amount | Collect |
|---|---|---|
| **Total Modification Fees/Payments to Be Included in Modified Loan Amount** | 0.00* | 0.00** |

**\*\*Make check payable to Regions Mortgage.**

**Calculation of Modified Loan Amount**
(Amounts Included in Modified Loan Amount)

| | |
|---|---|
| Interest | 1,272.28 |
| Escrow Required | 421.04 |
| Escrow Advance/Negative | |
| *Modification Fees/Payments **To be Included in Modified Loan Amount** | |
| Subtotals | 1,693.32 |
| Less Credits | |
| Escrow Balance (Positive) | |
| Suspense Balance | 8.84 |
| Other Credits | |
| Subtotal Credits | 8.84 |
| Total Amount Capitalized | 1,684.48 |
| Unpaid Principal Balance | 72,701.69 |
| **Modified Loan Amount** | 74,386.17 (Your loan balance after modification) |

**Payment Calculation**

| | |
|---|---|
| Initial P & I (or I/O) Payment | 216.96 |
| Estimated Escrow Payments | 62.48 |
| Mortgage Insurance | 42.78 |
| Optional Insurance (if any) | 0.00 |
| **New Estimated Monthly Payment** | 322.22 |

This monthly payment amount may change from time to time due to changes to your escrow account or to any changes to your interest rate or other terms in accordance with your note and your Loan Modification Agreement.

**New Payment Due Date: SEPTEMBER 1, 2010  (Effective with modification)**

Please be advised that the mortgage insurance cancellation date, termination date, or final termination date shall be recalculated to reflect the modified terms and conditions of your loan.

Post Office Box 18001, Hattiesburg, Mississippi 39404-8001
215 Forrest Street, Hattiesburg, Mississippi 39401-3476
WATS 1-800-986-2462
CLDS# RGN099-3 Rev. 04-27-10

Case 09-30466    Doc 21-1    Filed 07/30/10    Entered 07/30/10 16:36:00    Desc Main
Document Loan Modification Package    Page 1 of 21

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

Loan Number: 3020245324

Creditor: **REGIONS BANK DBA REGIONS MORTGAGE**
215 FORREST STREET
HATTIESBURG, MISSISSIPPI 39401

Date: **JULY 22, 2010**

Borrower(s) Name(s): **JAMES C DOWE AND ANGIE C DOWE**

Mailing Address: **3133 LITTLE JOHN DR, MONTGOMERY, ALABAMA 36109**
Property Address: **3133 LITTLE JOHN DR, MONTGOMERY, ALABAMA 36109**

| **ANNUAL PERCENTAGE RATE** The cost of your credit as a yearly rate. | **FINANCE CHARGE** The dollar amount the credit will cost you. | **Amount Financed** The amount of credit provided to you or on your behalf. | **Total Payments** The amount you have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 3.364 % | $ 46,603.24 | $ 74,386.17 | $ 120,989.41 |

A written Itemization of the Amount Financed and/or Good Faith Estimate of Settlement Costs is being or has been furnished with this disclosure.

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|---|
| | | Monthly Beginning: | | | |
| 38 | $259.73 | 09/01/2010 | | | |
| 22 | $229.35 | 11/01/2013 | | | |
| 20 | $365.14 | 09/01/2015 | | | |
| 279 | $352.75 | 05/01/2017 | | | |
| 1 | $353.92 | 08/01/2040 | | | |

☐ **Demand Feature:** This obligation has a demand feature.
☒ **Variable Rate Feature:** Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.
**Insurance:** You may obtain property insurance from anyone you want that is acceptable to Creditor.
**Security:** You are giving a security interest in the property being purchased or refinanced.
**Filing or Recording Fees:** $      0.00
**Late Charge:** If a payment is more than   15   days late, you will be charged   5.000   % of the payment.
**Prepayment:** If you pay off early, you   ☐ may  ☒ will not   have to pay a penalty.
                                                    ☐ may  ☒ will not   be entitled to a refund of part of the finance charge.

**Assumption:** Someone buying your property ☐ may  ☒ may, subject to conditions ☐ may not   assume the remainder of your loan on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties. All numerical disclosures except the late payment disclosure are estimates.

You are not required to complete this agreement merely because you have received these disclosures or signed a loan application.

NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if required), Property Taxes and Insurance.

# INTEREST ONLY COMPARISON

## Comparison of Sample Mortgage Interest Only Features
### (For illustrative and educational purposes only - does not represent actual terms of loans available from any particular lender)

### A Typical Mortgage Transaction
### Loan Amount $180,000 - 30-Year Term

| | Mortgage with a Fixed Interest Rate | | Mortgage with an Adjustable Interest Rate (ARM) | |
|---|---|---|---|---|
| | **Principal and Interest**<br><br>Fixed Rate (6.7%) | **Interest Only**<br><br>Fixed Rate (6.7%) Interest Only for First 5 Years | **5/1 ARM**<br>Fixed Rate for First 5 years; Adjustable Each Year After First 5 Years (Initial rate for years 1 to 5 is 6.5%; Maximum Rate is 11.5%) | **Interest Only**<br>Interest Only and Fixed Rate for First 5 Years; Adjustable Rate Each Years After First 5 Years (Initial rate for years 1 to 5 is 6.6%; Maximum Rate is 11.6%) |
| **Minimum Monthly Payment Years 1-5, except as noted** | $1,162* | $1,005 | $1,138 | $990 |
| **Monthly Payment Year 6 - no change in rates** | $1,162 | $1,238** | $1,138 | $1,227 |
| **Monthly Payment Year 6 - 2% rise in rates** | $1,162 | $1,238 | $1,357 | $1,462 |
| **Maximum Monthly Payment Year 8 - 5% rise in rates** | $1,162 | $1,238 | $1,702 | $1,832 |
| **How Much Will You Owe after 5 Years?** | $168,862 | $180,000 | $168,500 | $180,000 |
| **Have You Reduced Your Loan Balance after 5 Years of Payments?** | **Yes** Your loan balance was reduced by $11,118 | **No** You did not reduce your loan balance | **Yes** Your loan balance was reduced by $11,500 | **No** You did not reduce your loan balance |

\*    This illustrates an interest rate and payments that are fixed for the life of the loan.

\*\*    This illustrates payments that are fixed after the first 5 years of the loan at a higher amount because they cover both principal and interest.

\*\*\*    This illustrates minimum monthly payments that are based on an interest rate that is in effect during the first month only. The payments required during the first year will not be sufficient to cover all of the interest that's due when the rate increases in the second month of the loan. Any unpaid interest amount will be added to the loan balance. Minimum payments for years 2-5 are based on the higher interest rate in effect at the time, subject to any contract limits on payment increases. Minimum payments will be recast (recalculated) after 5 years, or when the loan balance reaches a certain limit, to cover both principal and interest at the applicable rate.

**IMPORTANT NOTE:  Please use this chart to discuss possible loan features with your lender.**

**PR - M/S INTEREST ONLY COMPARISON**
CLDS# RGN098 Rev. 03-03-09

Case 09-30466   Doc 21-1   Filed 07/30/10   Entered 07/30/10 16:36:00   Desc Main
Document Loan Modification Package   Page 3 of 21

Investor Loan #: 3020245324            Regions Loan#: 3020245324
                                        Investor: Regions Bank
                                        INV/CAT: R01/800
                                        Pool#:

# LOAN MODIFICATION AGREEMENT
## InterestFirst Adjustable Rate Modification Agreement
### (One-Year Treasury Index Rate Caps)

**THIS AGREEMENT PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS AGREEMENT LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

This Loan Modification Agreement ("Agreement or Note"), made this **22ND** day of **JULY, 2010** ,
between **JAMES C DOWE, AND AND ANGIE C DOWE, UNREMARRIED DIVORCED PERSONS**

                                             ("Borrower(s) or I") and

**REGIONS BANK DBA REGIONS MORTGAGE**

                                             ("Lender"),
amends and supplements (1) the Mortgage, Deed of Trust or Deed to Secure Debt ("Security Instrument"),
dated **JUNE 16, 2003** and recorded in **Book or Liber 1536, at page(s) 0965**
of the **JUDGE OF PROBATE** Records of **MONTGOMERY County, ALABAMA** ,
and (2) the Note, bearing the same date as, and secured by, the Security Instrument, and (3) any renewal,
extension or m odification t hereof which c overs t he real and personal property described i n the Security
Instrument and defined therein as as the "Property", which property is located at:

**3133 LITTLE JOHN DR, MONTGOMERY, ALABAMA 36109**

CoreLogic Document Services                                   RM - M/S 1 YR CMT ARM IO MODIFICATION
CoreLogic, Inc.
CLDS# RM105 Rev. 03-03-10                      Page 1

Case 09-30466    Doc 21-1    Filed 07/30/10    Entered 07/30/10 16:36:00    Desc Main
Document Loan Modification Package    Page 4 of 21

And the real property is described as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument or subsequent Renewal, Extension or Modification Agreements):

## 1. UNPAID PRINCIPAL BALANCE

As of **JULY 22, 2010** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ **74,386.17** , consisting of the amount(s) loaned to the borrower by the Lender and any interest or other charges capitalized to date.

## 2. INTEREST

Interest will be charged on the part of principal, which has not been paid. Unless otherwise agreed, interest will be charged beginning **AUGUST 1, 2010** and continue until all principal has been paid. I will pay interest at a yearly rate of **THREE AND 50/100** percent( **3.500 %**). This rate is called the "Initial Rate of Interest". The rate of interest I will pay may change in accordance with this Agreement. The rate of interest required by this Agreement is the rate I will pay both before and after any default.

## 3. PAYMENTS

### A. Time and Place of Payments

I will make a payment on the first day of every month, beginning on **SEPTEMBER 1, 2010** before the First Principal and Interest Payment Due Date as described in Section 4 of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before principal. If on **AUGUST 01, 2040** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at **Department 2520, P.O. Box 2153** ,
**Birmingham, Alabama 35287-2520** or a different place if required by the Note Holder.

### B. Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $ **216.96** before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payments.

**C. Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 and 5 of this Note.

# 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**A. Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **AUGUST, 2015** and the adjustable interest rate I will pay may change on that day every **12th** month thereafter. The date on which my initial fixed interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date".

**B. The "Index"**
Beginning with the first Change Date, my adjustable interest rate will be based on an "Index". The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**C. Calculation of Changes**
Before each Change Date, the Lender or its agent will calculate my new interest rate by adding **TWO AND 75/100** percentage points ( **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4 (D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount my monthly payment.

**D. Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **8.500** % or less than **TWO AND 75/100** percent ( **2.750** %). Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO AND NO /100** percentage point(s) ( **2.000** %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **8.500** %.

**E. Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**F. Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**G. Date of First Principal and Interest Payment**
The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

RM - M/S 1 YR CMT ARM IO MODIFICATION

## 5. MODIFICATION OF NOTE AND SECURITY INSTRUMENT

Except as modified by this agreement, all of the provisions of said Note, and any renewals, extensions, modifications, and said Security Instrument are and shall remain in full force and effect and shall be performed by the Borrower. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Security Instrument. Except as otherwise specifically provided in this Agreement, the Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement. The Borrower also will comply with all other covenants, agreements and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payment of taxes, insurance premiums, assessments, escrow items, impounds and all other payments that the Borrower is obligated to make under the Security Instrument. However, the following terms and provisions are forever canceled, null and void, as of the date of this Agreement.

a)  All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

b)  All terms and provisions of any adjustable rate rider or other instrument or document that is affixed to, w holly or partially incorporated into, o r is part o f, the N ote or Security I nstrument a nd that contains any such terms and provisions as those referred to in (a) above.

## 6. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my P repayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 7. ESCROW

The Lender m ay require an escrow a ccount for t he payment of taxes, ins urance and other r ecurring expenses relating to the Property of this loan. The Lender may, at any time, collect and hold funds in an amount not to exceed the maximum amount allowed by Real Estate Settlement Procedures Act of 1947, as amended from time to time, 12 U.S.C. Section 2601, et seq. ("RESPA") or such lesser amount as may be required by other applicable law. The Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law. The Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law does not prohibit Lender from making such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless Lender agrees in writing to pay interest or applicable law requires interest to be paid, Lender shall not be obligated to pay interest or earnings on Funds.

### 8. ANNUAL STATEMENT OF ACCOUNT

Lender will, if required by law, provide Borrower with an annual statement and accounting of all transactions and charges in conjunction with this loan in accordance with the Federal Real Estate Settlement Procedure Act. This statement and accounting may describe the application of all payments to principal, interest and escrow, and may disclose all fees charged and escrow transactions. The annual statement and accounting may also reconcile beginning and ending principal and escrow balances and may reflect the current interest rate. A separate annual statement will disclose the calculation of any adjustable interest rate changes at the time any rate changes apply. I agree to read the annual statements and accounting and immediately notify Lender of any discrepancies or of any calculation, which I believe to be incorrect.

I agree that I shall have one year from the date of receipt of the annual statement and/or accounting to notify the Lender of any errors in or objections to any matters disclosed on the statement including, but not limited to, fees charged and the application of payments, including any calculation required of any adjustable interest rate used for the statement period.

Unless I notify the Lender in writing of any errors or objections within one year from date of receipt of the statement and accounting or the adjustable interest rate calculation, then I agree that the unpaid principal and escrow balances presented in the statement and accounting shall be deemed to be correct and I agree that all further requirements for any and all corrections, including but not limited to interest rate calculations, shall be forever barred and waived.

### 9. LOAN CHARGES

The Lender may collect fees for all loan services including but not limited to recording, copying, assumptions, modification, partial releases, fax transmission services, any other fees or charges permitted by Government sponsored agencies such as FHA, VA, FNMA, FHLMC or GNMA, and any fees disclosed in Lender's or Servicer's fee schedule which may change from time to time. The Security Instrument may be canceled in any manner permitted by applicable law and Lender may charge borrower for all expenses of cancellation and may charge fees relating to cancellation.

### 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A.) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 5 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interest transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property of any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 5 above, Uniform Covenant 18 of the Security Instrument described in Section 10(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 19, "Interest in the Property" means any legal or beneficial interest in property, including, but not limited to, those beneficial interest transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any party of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee: and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. MODIFICATIONS TO LOAN

Without affecting Borrower's liability or the liability of any other person (except any person expressly released in writing) for payments of any indebtedness evidence hereby or for performance of any obligation contained herein and without affecting the rights of the Lender with respect to any security not expressly released in writing, the Lender may at the request of any one or more persons who are obligated by this Agreement or the Security Instrument and, at any time and from time to time, either before or after the maturity of this Agreement, and without notice to or consent of any other persons; (a) Release any person liable for payment of all or any part of the indebtedness or for performance of any obligation; (b) Make any agreement extending the time or otherwise altering the terms of payment of all or any part of the indebtedness, or modifying or waiving any obligation or subordinating, modifying, or otherwise dealing with the Security Instrument; (c) Exercise or refrain from exercising or waive any

right the lender may have; (d) Accept additional security of any kind; and (e) Release or otherwise deal with any property, real or personal, securing the indebtedness, including all or any part of the property described in the Security Instrument.

## 12. BORROWER'S FAILURE TO PAY AS REQUIRED

### A. Late Charge for Overdue Payments

If the Lender has not received the full amount of any monthly payment by the end of **fifteen (15)** calendar days after the date the payment is due, I will pay a late charge to the Lender. The amount of the charge will not exceed **FIVE** percent ( **5.000** %) of my overdue payment of principal and interest. I will pay this late charge only once on any late payment and this late charge shall be immediately due and payable without demand.

### B. Default

If I do not pay the full amount of each monthly payment on time, I will be in default. If I am in default, the Lender may require me to pay immediately the full amount of unpaid principal and all the interest that I owe on that amount. If the Lender did not require me to pay immediately in full, while I was in default, the Lender will still have the right at a later time to require full payment if I default again. I agree that if the Lender accepts partial payment, I shall still be in default and that Lender may refuse to accept partial payments at any time and that acceptance of a partial payment shall not waiver, alter, or amend Lender's rights. Any waiver by Lender of any payment shall not be a waiver of any other payment or of the terms of the Note, renewals, extensions, modifications or instruments securing it and any waiver by Lender of any other payment or terms of the loan must be in writing to be effective.

In the event of Borrower's default or insolvency, any moneys or other property at any time in the possession of the Lender belonging to any of the parties liable hereon to Lender, as well as any deposits, balance of deposits, or other sums at any time credited by or due from Lender to any said parties, may at all times, at the option of Lender, be held and treated as collateral security for the payment of the Note and this Agreement, whether or not due, and Lender, may at any time, at its option, set off the amount due, or to become due hereon, against any claim of any said parties against Lender.

It is agreed that time is of the essence, and in the event Borrower fails to do and perform any of the obligations of the Note, this Agreement or Security Instrument, the filing of a voluntary petition of bankruptcy by any Borrower or the bringing of any insolvency proceedings against any Borrower, then, at the option of the Lender, the total debt shall become due and payable.

### C. Payment of Lender's Costs and Expenses

If this loan is in default, then Borrower shall pay Lender all costs and expenses relating to the default, including but not limited to, inspection fees, appraisal and return check fees. If any action at law or in equity is brought with respect to this Note or the Security Instrument, then the Borrower shall pay Lender all costs and expenses of defending and preserving Lender's rights, including attorney's fees. If the Note and/or any renewals, extensions or modifications is placed in the hands of an attorney for collection, then the Borrower shall pay the Lender an attorney's fee of not less than 15% of the amount due, unless a different amount is required by applicable law, together with all other charges and expenses.

## 13. GIVING OF NOTICES

All notices must be in writing. Unless applicable law requires a different method of giving notice, any notice that must be given to Borrower under the Note, renewals, extensions or modifications, if any, will be given by delivering it or by mailing it by first class mail addressed to Borrower at the property

Case 09-30466   Doc 21-1   Filed 07/30/10   Entered 07/30/10 16:36:00   Desc Main
Document Loan Modification Package   Page 10 of 21

address or at a different address if Borrower has given the Lender a notice of different address.  Any notice that must be given to the Lender under the Note, renewals, extensions or modifications, if any, will be given by mailing it by first class mail to the Lender at the address stated in the Note, renewal, extensions or modifications, if any, or at a different address if Borrower has been given notice of that different address.

### 14. OBLIGATIONS OF PERSONS UNDER THIS AGREEMENT

If more than one person signs this Agreement, each person is fully and personally obligated to keep all of the promises made in the Agreement, including the promise to pay the full amount owed.  Any person who is a guarantor, surety, or endorser of this Agreement is also obligated to do these things.  Any person who takes over the obligations under this Agreement or any person who takes over the obligations of a guarantor, surety, or endorser of this Agreement is also obligated to keep all of the promises made in the Agreement.  The Lender may enforce its rights under this Agreement against each person individually or against some or all.  This means that any one who signs this Agreement may be required to pay all the amounts owed under this Agreement.

### 15. WAIVERS

I and any other person who has obligations under this Agreement waive the rights of presentment and notice of dishonor.  "Presentment" means the right to require the Lender to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Lender to give notice that amounts due have not been paid.

### 16. FORECLOSURE

The Lender reserves the right to effect a lawful foreclosure of the above Security Instrument in the event of default by Borrower according to the terms and conditions of said Security Instrument and the laws of the State wherein the real property is located, applicable thereto, including the right to publish the foreclosure notice in the name of the original Borrower and any and all other parties that have assumed said Note and Security Instrument.

### 17. AGREEMENT S ECURED BY A DEED OF TRUST, MORTGAGE OR SECURITY DEED

In addition to the protections given to the Lender under the Note, a Deed of Trust, Mortgage or Security Deed ("Security Instrument") as stated above, helps protect the Lender from losses which might result if I do not keep the promises which I make in this Agreement and reference to which Security Instrument is hereby made for all purposes.  I agree that the Lender does not have to try to collect the money I owe from the Property described in the Security Instrument, and the Lender can rely solely on the Note, renewals, extensions or modifications, if any, this Agreement and/or the Security Instrument.  I further understand that I may be liable for any deficiency that results if the property described in the Security Instrument does not satisfy the debt.

### 18. ARBITRATION

Any controversy or c laim arising o ut o f o r relating to this d ocument or a ny transactions, e vents or contracts in any way relating to or arising from this document, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA) and judgment upon the award rendered by the arbitrator may be entered in any Court having jurisdiction thereof.  If a separate Alternative Dispute Resolution Agreement and/or Arbitration Agreement now or hereafter exists between the Lender and any of the parties to this document which separate agreement

Case 09-30466   Doc 21-1   Filed 07/30/10   Entered 07/30/10 16:36:00   Desc Main
Document Loan Modification Package   Page 11 of 21

would govern the dispute arising from or related to this Agreement, then all parties agree to be bound by the separate Alternative Dispute Resolution Agreement or Arbitration Agreement which shall totally supersede this arbitration provision. If the separate agreement is determined for any reason to be invalid or unenforceable, then this arbitration provision may be enforced by any party.

## 19. GOVERNING LAW

For purposes of perfecting and enforcing the security interest, the Security Instrument shall be governed by the laws of the state where the property is located. For all other purposes, the Security Instrument and the Note and any renewals, extension or modifications and all actions arising from or related to this loan shall be governed by the federal laws and regulations applicable to Lender and the laws of the state in which Lender is domiciled to the extent those states laws do not conflict with applicable federal law. Except as to foreclosure and possessory actions, all legal actions involving the Security Instrument and/or the loan secured thereby shall be brought and maintained only in a court of competent jurisdiction in the state of the Lender's domicile or in a federal court in a state where the property is located. If, after the date hereof, enactment or expiration of applicable laws have the effect either of rendering this provisions of the Note, renewal, extension or modifications, the Security Instrument or any rider unenforceable according to their terms, or all or any part of the sums secured hereby uncollectible, or of diminishing the value of Lender's security, then Lender, at Lender's option, may declare all sums secured by the Security Instrument to be immediately due and payable. In such event, Borrower shall not have the right to reinstate. If Borrower contends that the loan terms violate any law or regulation, then Borrower agrees to notify the Lender and that the Lender may modify and/or adjust the loan to comply with applicable law; and if the Lender makes such modification and/or adjustment, then Borrower waives any and all other remedies and releases Lender from all consequential and punitive damages, if any, Borrower agrees that this Agreement has been entered into in good faith by Borrower and Lender without intent to violate any law or regulation.

## 20. NO SET-OFFS OR DEFENSES

As an inducement for Lender to consent to this modification, Borrower hereby represents, covenants and warrants to Lender that there are no set-offs or defenses to the Note and Security Instrument or to the amount of the debt as herein before set forth.

## 21. PRIOR LIENS

If Lender determines that all or any part of the sums described herein are subject to a lien which has priority over this Agreement or the Security Instrument, Lender may send Borrower a notice identifying that lien, and Borrower shall promptly act with regard to that lien so as to cause it to be immediately subordinated to the liens securing this Agreement or shall pay off and discharge said lien.

## 22. ENTIRE AGREEMENT

This instrument contains the entire agreement of the parties and there are no oral or other agreements. This instrument may only be modified, amended or changed by a subsequent written instrument signed by the party to be bound. Except as modified by this agreement, all of the provisions of said Note, any renewals, extensions and modification, and said Security Instrument are and shall remain in full force and effect and shall be performed by the Borrower.

## 23. BINDING EFFECT

This agreement shall be binding upon and inure to the benefit of the parties hereto, their legal representatives, heirs, administrators, executors, successors and assigns.

Case 09-30466    Doc 21-1    Filed 07/30/10    Entered 07/30/10 16:36:00    Desc Main
Document Loan Modification Package    Page 12 of 21

WITNESS the hand(s) and seal(s) of the undersigned as of date first written above.

| | | | |
|---|---|---|---|
| _____ (Seal) | | _____ (Seal) | |
| **JAMES C DOWE** -Borrower | | **ANGIE C DOWE** -Borrower | |
| | | | |
| _____ (Seal) | | _____ (Seal) | |
| -Borrower | | -Borrower | |
| | | | |
| _____ (Seal) | | _____ (Seal) | |
| -Borrower | | -Borrower | |

AGREED TO BY:
**REGIONS BANK DBA REGIONS MORTGAGE**
(Mortgage Servicer)

By: _____

Name: **BRENDA GOFF**
Title: **VICE PRESIDENT**

_____
(Date)

-----------------------------------See next page for Notary Acknowledgments-----------------------------------------

_____  [Space Below This Line for Acknowledgments]  _____

**BORROWER ACKNOWLEDGMENT**

The State of **ALABAMA**                    )
_____ County  )

I, _____ hereby certify that _____
**JAMES C DOWE, AND AND ANGIE C DOWE, UNREMARRIED DIVORCED PERSONS**

_____

_____

_____

whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he executed the same voluntarily on the day the same bears date.

Given under my hand this _____ day of _____, 20____.


_____
(Style of Officer)


**LENDER ACKNOWLEDGMENT**

The State of **MISSISSIPPI**              )
**FORREST**                     County )

I, _____, a _____ in and for said County in said State, hereby certify that **BRENDA GOFF** _____ whose name as **VICE PRESIDENT** _____ of the _____,
a corporation, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand this the _____ day of _____, 20____.


_____
(Style of Officer)


CoreLogic Document Services
CoreLogic, Inc.
CLDS# ALRM105-11 Rev. 04-16-10                    Page 11                    RM - M/S 1 YR CMT ARM MODIFICATION

**EXHIBIT A**

**BORROWER(S):** JAMES C DOWE, AND AND ANGIE C DOWE, UNREMARRIED DIVORCED PERSONS

**LOAN NUMBER:** 3020245324

**LEGAL DESCRIPTION:**

**ALSO KNOWN AS:** 3133 LITTLE JOHN DR, MONTGOMERY, ALABAMA 36109

CLDS# EXHIBIT.A Rev. 07-03-07

**CONFORMING AND NON-CONFORMING ARMs - "INTEREST ONLY" - 1 Yr Treasury Securities**

This disclosure describes the features of an Adjustable Rate Mortgage (ARM) program you are considering. Information about our other ARM programs will be provided upon request.

| HOW YOUR INTEREST RATE AND PAYMENT ARE DETERMINED |
|---|

- After the first, third, fifth, seventh or tenth year of your loan, as applicable, your interest rate will be based on an index rate plus a margin. Please ask us for our current interest rates.
- The "index" is the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as published in the Federal Reserve Board's Statistical Release H.15(519) and *The Wall Street Journal*. If the index is no longer available, we may choose a new index which is based on comparable information. You will be given notice of any change of index.
- The margin is an amount added to the index to establish your interest rate. It is expressed in percentage points. The margin will stay the same throughout the term of the loan. Ask for our margin.
- Your initial interest rate is not based on the index used to make later adjustments. If the initial interest rate is less than the sum of the then-current index plus margin (the "fully indexed rate"), then the initial interest rate will be a "discounted" interest rate. If the initial interest rate is greater than the fully indexed rate, then it will be a "premium" interest rate. Please ask us for the amount of our interest rate discounts and premiums.
- For the first year, or for the first three, five, seven or ten years of your loan, as applicable, your payment will be based on the interest rate, loan balance, and remaining loan term.

|  | 1 Year ARM | 3/1 ARM | 5/1 ARM | 7/1 ARM | 10/1 ARM |
|---|---|---|---|---|---|
| **How Your Interest Rate Can Change** | | | | | |
| Your interest rate can change: | After one year and annually thereafter | After 3 years and annually thereafter | After 5 years and annually thereafter | After 7 years and annually thereafter | After 10 years and annually thereafter |
| **How Your Payment Can Change** | | | | | |
| Each time your interest rate changes, the new interest rate will equal the sum of the index plus the margin, subject to the following limits: | • Your interest rate will be rounded to the nearest 1/8%.<br>• On the first change date, your interest rate can increase or decrease by 2.0%.<br>• On each subsequent change date, your interest rate will not increase by more than 2.0%.<br>• Your interest rate will not increase by more than 6.0% over the life of your loan. | • Your interest rate will be rounded to the nearest 1/8%.<br>• On the first change date, your interest rate can increase or decrease by 2.0%.<br>• On each subsequent change date, your interest rate will not increase by more than 2.0%.<br>• Your interest rate will not increase by more than 6.0% over the life of your loan. | • Your interest rate will be rounded to the nearest 1/8%.<br>• On the first change date, your interest rate can increase or decrease by 5.0%.<br>• On each subsequent change date, your interest rate will not increase by more than 2.0%.<br>• Your interest rate will not increase by more than 5.0% over the life of your loan. | • Your interest rate will be rounded to the nearest 1/8%.<br>• On the first change date, your interest rate can increase or decrease by 5.0%.<br>• On each subsequent change date, your interest rate will not increase by more than 2.0%.<br>• Your interest rate will not increase by more than 5.0% over the life of your loan. | • Your interest rate will be rounded to the nearest 1/8%.<br>• On the first change date, your interest rate can increase or decrease by 5.0%.<br>• On each subsequent change date, your interest rate will not increase by more than 2.0%.<br>• Your interest rate will not increase by more than 5.0% over the life of your loan. |
| Your monthly payment will cover Interest-Only for the: | First 1 year of your loan. | First 3 years of your loan. | First 5 years of your loan. | First 7 years of your loan. | First 10 years of your loan. |

| If you make voluntary principal payments during the Interest-Only period: | Your required Interest-Only payment will be reduced to reflect the decrease in your loan amount. |
|---|---|
| Your monthly payments can change: | Each time the interest rate changes, and can increase or decrease substantially based on changes in the interest rate. |

For the 1st year or the first 3, 5, 7, or 10 years of your loan, as applicable, your regular monthly payments will not reduce your loan balance. After this initial Interest-Only period, your monthly payments will begin to reduce your loan balance. This means that your payments could increase substantially when the Interest-Only period ends, even if your interest rate stays the same or goes down.

You will be notified in writing at least 25 days but no more than 120 days, before the due date of a payment at a new level. This notice will contain information about the index, your interest rate, payment amount and loan balance.

*The examples below illustrate interest rate and payment changes based on a $10,000, 30 year loan using an initial interest rate in effect on the first business day of November, 2008, and assume the maximum periodic increases in rate and payments*

| Initial Rate | 7.125% | 7.375% | 8.000% | 8.375% | 8.625% |
|---|---|---|---|---|---|
| Maximum Rate | 13.125% | 13.375% | 13.000% | 13.375% | 13.625% |
| First Year Payment | $59.38 | $61.46 | $66.67 | $69.79 | $71.88 |
| Maximum Payment | $111.25 | $113.86 | $112.78 | $114.17 | $121.64 |

Note: To see what your payment would be, divide your mortgage amount by $10,000; then multiply the monthly payment by that amount. For example, the monthly payment for a $60,000 5/1 ARM with a discounted interest rate would be: $60,000 divided by $10,000 = 6; 6 x $66.67 = $400.02.

### Applicant(s) Acknowledgement

By signing below, you acknowledge that you have received a copy of this ARM Program Disclosure and a copy of the booklet titled *Consumer Handbook on Adjustable Rate Mortgages*. You further acknowledge that this Disclosure does not obligate us to make any loan and that you must provide us with a completed application and other required information before being considered for loan approval.

**JAMES C DOWE**     Date     **ANGIE C DOWE**     Date

Date     Date

CoreLogic Document Services
CoreLogic, Inc.
CLDS# RM204-2 Rev. 12-10-08    Page 2

AM - M/S CONV 1 YR CMT INDEX INT ONLY ARM DISC
Rev. 11/08

Case 09-30466   Doc 21-1   Filed 07/30/10   Entered 07/30/10 16:36:00   Desc Main
Document Loan Modification Package   Page 17 of 21

Date: **JULY 22, 2010**
Loan Number: **3020245324**
Lender: **REGIONS BANK DBA REGIONS MORTGAGE**

Borrower: **JAMES C DOWE AND ANGIE C DOWE**

Property Address: **3133 LITTLE JOHN DR**
**MONTGOMERY, ALABAMA 36109**

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____     _____
Borrower                                                                                                          Date
**JAMES C DOWE**

_____     _____
Borrower                                                                                                          Date
**ANGIE C DOWE**

_____     _____
Borrower                                                                                                          Date

_____     _____
Borrower                                                                                                          Date

_____     _____
Borrower                                                                                                          Date

_____     _____
Borrower                                                                                                          Date

CoreLogic Document Services
© 2010 CoreLogic, Inc.
CLDS# FAND033 Rev. 12-10-08

Notice of No Oral Agreements

Date: **JULY 22, 2010**
Loan Number: **3020245324**
Lender: **REGIONS BANK DBA REGIONS MORTGAGE**

Borrower: **JAMES C DOWE AND ANGIE C DOWE**

Property Address: **3133 LITTLE JOHN DR**
**MONTGOMERY, ALABAMA 36109**

# ERRORS AND OMISSIONS
# COMPLIANCE AGREEMENT

In consideration of **REGIONS BANK DBA REGIONS MORTGAGE**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____     _____
**JAMES C DOWE**                                                  Date


_____     _____
**ANGIE C DOWE**                                                  Date


_____     _____
                                                                  Date


_____     _____
                                                                  Date


_____     _____
                                                                  Date


_____     _____
                                                                  Date

CoreLogic Document Services
© 2010 CoreLogic, Inc.
CLDS# FAND034 Rev. 12-10-08

Errors and Omissions Compliance Agreement

# DISCLOSURE NOTICE CONCERNING PRIVATE MORTGAGE INSURANCE
## ADJUSTABLE RATE MORTGAGE

Date: **JULY 22, 2010**

Borrower Name(s): **JAMES C DOWE AND ANGIE C DOWE**

Property Address: **3133 LITTLE JOHN DR**
**MONTGOMERY, ALABAMA 36109**

Loan Number: **3020245324**

You are obtaining a modification of a loan that requires private mortgage insurance ("PMI") PMI protects lenders and others against financial loss when borrowers default. Charges for the insurance are added to your loan payments.

Under c ertain circumstances, f ederal l aw g ives you the r ight t o c ancel PMI o r r equires that P MI a utomatically terminate. This disclosure describes when cancellation and termination may occur. Please note that PMI is not the same as property/casualty insurance - such as homeowners or flood insurance - which protects you against damages to the property. Cancellation or termination of PMI does not affect any obligation you may have to maintain other types of insurance.

In this disclosure:
    "Loan" means the mortgage loan that is being modified;
    "you" means the original borrower (or his or her successors or (assigns);
    "Property" means the property securing the mortgage loan;
        "original value" means the lesser of the contract sales price of the property or the appraised value of the property at the time the was closed (however, if the loan was originally a refinance of an existing loan secured by the property, "original value" means the appraised value relied on by the lender to approve this loan); and "good payment history" means no payments 60 or more days past due within two years and no payments 30 or more days past due within one year of the later (a) the cancellation date, or (b) the date you submit a request for cancellation.

## BORROWER REQUESTED CANCELLATION OF PMI:

You have the right to request that PMI be cancelled on or after the following dates:

1. The date the principal balance of your loan is first scheduled t o r each 80 % of the original value of the property. (For balloon loans with either an adjustable interest rate or a conditional right to refinance, if applicable, this date may not be reached before the loan matures.)
2. The date the principal balance actually reaches 80% of the original value of the property.

You will be notified when these dates are reached.

PMI will only be cancelled if all of the following conditions are satisfied.

1. you submit a written request for cancellation.
2. you have a good payment history.
3. you are current on the payments required by your loan; and
4. we receive, if requested and at your expense, evidence that the value of the property has not declined below its original value, and certification that there are no subordinate liens on the property.

CoreLogic Document Services                                Disclosure Notice Concerning PMI Adjustable Rate Mortgage
CoreLogic, Inc.
CLDS# RGNMI068 Rev. 10-21-09                    Page 1

**AUTOMATIC TERMINATION OF PMI:**

If you are current on your loan payments, PMI will automatically terminate on the date the principal balance of your loan, as modified, is first scheduled to reach 78% of the original value of the Property. If you are not current on your payments as of that date, PMI will automatically terminate on the first day of the month immediately following the date you thereafter become current on your payments.

For certain high risk loans, there are exemptions to the right to cancellation and automatic termination of a requirement for private mortgage insurance. Such an exemption does not apply at this time to your loan.

If you have additional questions concerning this matter, or if we can be or assistance, feel free to contact our Mortgage Loan Customer Service Department at 1-800-986-2462.